UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDDIE GARCIA,

                     Plaintiff,

v.                                         9:00-CV-1403
                                         (GLS/GHL)

SERGEANT WEBBER, Marcy Correctional Facility;
CORRECTION OFFICER McDOWELL, Marcy
Correctional Facility; JOSEPH JACKSON, Inmate,
Marcy Correctional Facility; and JOHN DOES # 1-7,
Correctional Officers at Marcy Correctional Facility,

                     Defendants.
_____

APPEARANCES:                        OF COUNSEL:

EDDIE GARCIA, 93-A-4498
  Plaintiff, *Pro Se*
Clinton Correctional Facility Annex
P.O. Box 2000
Dannemora, NY 12929

HON. ELIOT L. SPITZER                JOEL L. MARMELSTEIN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
  Counsel for Defendant Webber
207 Genesee Street
Utica, NY 13501

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This action has been referred to the undersigned for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c) of the Local Rules of Practice for this Court.  Plaintiff, currently an inmate at

Clinton Correctional Facility, commenced this *pro se* action pursuant to 42 U.S.C. § 1983

alleging the violation of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the U.S. Constitution.  (Dkt. No. 1.)  Currently pending is Defendant Webber's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. No. 44.)  For the reasons that follow, it is recommended that Defendant Webber's motion be conditionally granted.

## I.    BACKGROUND

Plaintiff filed his complaint in this matter *pro se* on September 15, 2000.  (Dkt. No. 1.)  Generally, Plaintiff's complaint alleges that Defendant Correctional Officers (employees of Marcy Correctional Facility) knowingly and consciously disregarded a substantial risk of serious harm to him by knowingly or recklessly forcing him to share a cell with a member of a rival gang (who had previously attacked another Hispanic inmate), and/or disregarding evidence of violence being committed by that rival gang member against Plaintiff in October of 1998.  (*Id*.)

More specifically, Plaintiff's complaint, which is verified, sets forth, in pertinent part, the following factual allegations.  On or about October 9, 1998, Plaintiff arrived at Marcy Correctional Facility ("Marcy C.F."), where he was interviewed by Defendant Webber and asked if he had any enemies.  (*Id*. at ¶¶ 10-11.)  Plaintiff responded that his only enemies were members of a gang called the Bloods, since Plaintiff was a former member of a rival gang called the Netas.  (*Id*.)  Defendant Webber then assigned Plaintiff to a double-bunk cell, which he would share with inmate Joseph Jackson.[1]  (*Id*.)  On or about October 10, 1998, Plaintiff was informed by Defendant McDowell and Defendant Doe # 1 that inmate Jackson was a member of

---

[1]     Plaintiff also alleges, "upon information and belief," that inmate Jackson was placed in the Special Housing Unit because of "gang and/or violent activity," and because he had been involved in an incident with inmate ALVEREZ . . . ."  (Dkt. No. 1, ¶¶ 8, 32[b].)

2

the Bloods.  (*Id*. at ¶ 14.)  When Plaintiff objected that he should not be housed with Mr.

Jackson, Defendant McDowell stated, "You will . . . go wherever we tell you to[,] convict."  (*Id*.)

Between approximately October 14, 1998, and October 23, 1998, inmate Jackson beat,

sodomized and/or burned Plaintiff at least six times in their cell.  (*Id*. at ¶¶ 15-22.)  At several

points during this time period, (1) Plaintiff called out for help loud enough to be heard by

Defendant Does # 1 through 7, who were on duty at the time, (2) inmate Jackson himself

informed Defendant McDowell and Defendant Doe # 2 that he would kill Plaintiff if Plaintiff

was not removed from his cell, and (3) Defendant McDowell and various of the Defendant Does

either saw evidence of Plaintiff's injuries, or actually witnessed an instance of assault; however,

those Defendants did not come to Plaintiff's aid and indeed at various instances laughed.  (*Id*. at

¶¶ 17-19, 21-22.)[2]

Perhaps most relevant to the current motion, Plaintiff alleges in his complaint that he did

not present the facts relating to his complaint in Marcy C.F.'s prisoner grievance program

because "[r]ape [and] [a]ssault upon prisoners is [sic] not a grievance matter."  (Dkt. No. 1 at 2-

3.)

On April 29, 2003, Defendant Webber filed a motion for judgment on the pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure on the ground that Plaintiff failed to exhaust

his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42

---

[2]        By a verified affirmation filed on April 24, 2005, Plaintiff (1) further identified
Defendant "Sergeant Webber" as "Correctional Sergeant Rickie R. Webber," (2) further
identified Defendant "Correction Officer McDowell" as "Correctional Officer Gary J.
McConnell," and (3) further identified Defendant "John Doe # 1" as "the correctional officer
who accompanied Defendant McConnell on or about October 10, 19998 when he escorted
Plaintiff to receive his property."  (Dkt. No. 24 at 9-10, Ex. H.)

U.S.C. § 1997e(a).  (Dkt. No. 44; Dkt. No. 45 at 4-5.)  To show that Plaintiff filed no such

grievance, Defendant Webber relies on (1) an affidavit of Thomas Eagen, Director of the Inmate

Grievance Program attesting to the fact that, despite a diligent search for any such grievance filed

by Plaintiff, none was found, and (2) Plaintiff's own complaint, in which (as stated above)

Plaintiff alleges that, although Marcy C.F. had a prisoner grievance program during the time in

question, Plaintiff did not present the facts relating to his complaint in this grievance program

because "[r]ape [and] [a]ssault upon prisoners is [sic] not a grievance matter."  (Dkt. No. 45 at 3-

4; Dkt. No. 44, ¶ 5; Dkt. No. 1 at 2-3.)  Defendant Webber argues that, to the contrary, the

circumstances that form the basis of the current complaint constitute a grievable matter.  (Dkt.

No. 45 at 4-5.)  Specifically, Defendant Webber argues that, under the PLRA, prisoners must

grieve matters regarding "prison conditions," which term has been interpreted expansively.  (Dkt.

No. 45 at 4-5; *cf.* Dkt. No. 44, ¶ 5 [Affidavit of Thomas Eagen asserting that sexual and physical

abuse by a fellow inmate constitute a grievable matter pursuant to the regulations of the

Department of Corrections].)

On October 23, 2003, Plaintiff filed a response.  (Dkt. No. 47.)  In that response, Plaintiff

repeats his assertion that the circumstances that form the basis of his complaint do not constitute

a grievable matter.  (*Id*. at 1-2.)  In addition, liberally construed, Plaintiff's response advances

two additional arguments: (1) rather than having to do with "prison conditions," his complaint

has to do with the "intentional negligence on the part of the defendants," and, as far as Plaintiff

knew, negligence could not be grieved through the prison's grievance program; and (2) even if

the circumstances that form the basis of his complaint do constitute a grievable matter, Plaintiff

should be excused from failing to file such a grievance because his "first priority" was "his

health" following the physical and sexual assaults and "the criminal case [presumably against inmate Jackson] that would follow."  (*Id*. at 2.)

On November 3, 2003, Defendant Webber filed a reply.  (Dkt. No. 50.)  In that reply, Defendant Webber does not address the merits of Plaintiff's response, but instead argues that the response should be rejected as untimely.  (*Id*.)

## II.    DISCUSSION

### A.    Dismissal Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted).[3]  "Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sheppard*, 18 F.3d at 150 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957])."  "This standard applies with particular strictness where the plaintiff files a *pro se* complaint alleging civil rights violations." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted).  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (addressing Rule 12[b][6] motion)

---

[3]       *Accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

(internal quotation and citation omitted).

As with a Rule 12(b)(6) motion, Rule 12(c) motions generally are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[4]   However, the mandate to read the complaint of a *pro se* civil rights litigant generously makes it permissible to consider factual allegations contained in plaintiff's verified opposition to a Rule 12(c) motion *to the extent those factual allegations are consistent with the allegations in his complaint.*[5]

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

---

[4]    *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[5]    *Woods v. Goord*, 01 Civ. 3255, 2002 U.S. Dist. LEXIS 7157, *2, n.2 (S.D.N.Y. Apr. 22, 2002) (construing *pro se* civil rights plaintiff's papers in opposition to defendants' Rule 12[c] motion as containing "factual allegations to the extent that they are consistent with the allegations in the Amended Complaint") (citations omitted); *Torrico v. IBM*, 213 F. Supp.2d 390, 399, n.4 (S.D.N.Y. 2002) (in addressing Rule 12[c] motion, stating that "'as long as they are consistent with the allegations of the complaint, a party may assert additional facts in his or her response to a motion to dismiss,' especially where, as here, those factual allegations are directly responsive to a defense first raised in the motion itself.") (citation omitted); *Riordan v. AGFE*, 01-CV-1136, 2001 U.S. Dist. LEXIS 17874, *8, n.5 (S.D.N.Y. Nov. 1, 2001) (in addressing Rule 12[c] motion, stating that "[b]ecause plaintiff is proceeding pro se, the factual allegations [contained in Plaintiff's response affidavit], which are consistent with the other allegations contained in the Amended Complaint, will be duly considered") (citations omitted); *see also Indelico v. Suarez*, 207 F. Supp.2d 216, 218 (S.D.N.Y. 2002) (recognizing that "the court may look beyond the complaint to the plaintiff's opposition papers" on a Rule 12[c] motion) (citation omitted).

(internal quotation and citation omitted).[6]  Of course, an opportunity to replead should be denied

where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading

will not cure it." *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation

omitted).[7]

Upon thorough review of Defendant Webber's motion papers and Plaintiff's liberally

construed complaint, I have determined that Defendant Webber is entitled to the conditional

dismissal of Plaintiff's complaint.

The Second Circuit has recently held that a three-part inquiry is appropriate where a

defendant contends that a prisoner has failed to exhaust his available administrative remedies, as

required by the Prison Litigation Reform Act ("PLRA").  *See Hemphill v. State of New York*, 380

F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative

remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380

F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . .

inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense

of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions

inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from

raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the

remedies were available and some of the defendants did not forefeit, and were not estopped from

---

[6]      *See also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice
so requires").

[7]      *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)
("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a
complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with
prejudice) (citation omitted).

raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

      1.     **Whether the Administrative Remedies Not Pursued by Plaintiff Were Generally "Available" to Plaintiff**

Since Plaintiff acknowledges in his complaint that Marcy C.F. had a working grievance program, the more narrow issue here is whether, during the two weeks[8] following the last alleged assault on October 23, 1998, the failure of prison officials to protect a prisoner from assault by a fellow inmate was a grievable matter. The short answer is yes.[9] Reasonable confusion *might* have existed regarding this point of law in 1998; however, that fact is relevant to the third inquiry, discussed below, not to this first inquiry.

To the extent Plaintiff argues that claims of simple negligence are not grievable, Plaintiff is advised that he is correct, but that such claims are not actionable under 42 U.S.C. § 1983.[10]

---

[8]    Assuming that no exception can be obtained, Plaintiff had fourteen days from the last assault to file a grievance. *See* DOCS Directive 4040 § V(A)(1) (June 8, 1998) ("An inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence on Inmate Grievance Complaint Form # 2131. . . . Note: Exceptions to this time limit . . . may be approved by the IGP supervisor based on mitigating circumstances (e.g. attempts to resolve informally by the inmate, etc.).") (codified at 7 N.Y.C.R.R. § 701.7[a][1]).

[9]    *See*, *e.g.*, *Feliciano v. Goord*, 97 Civ. 1263, 1998 U.S. Dist. LEXIS 11506, *6-7 (S.D.N.Y. July 27, 1998) (implying that plaintiff's claim that defendants failed to protect him from assaults by another inmate was indeed a grievable matter, even though plaintiff was advised otherwise); *Soto v. Elston*, 993 F. Supp. 163, 164 (W.D.N.Y. 1998) (reasoning that all matters relating to prison conditions could be grieved, even claims of failure to protect plaintiff from an assault by another inmate) (citations omitted).

[10]    *See Daniels v. William*s, 474 U.S. 327, 333 (1986) ("Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required.") (citation and internal quotations omitted).

Rather than alleging simple negligence, his complaint, when construed liberally, alleges a

knowing and conscious disregard by Defendants of a substantial risk of serious harm to Plaintiff

from another inmate, which type of allegation (often informally referred to as a "failure to

protect" claim) is both actionable under Section 1983 and grievable.  *See, e.g., Manos v. Decker*,

03-CV-2370, 2005 U.S. Dist. LEXIS 3522, *20 (S.D.N.Y. March 7, 2005).

> **2.    Whether Defendant Webber Inhibited Plaintiff's Exhaustion of
> Remedies So as to Estop Defendant Webber from Raising the Failure
> to Exhaust as a Defense**

Even a most liberal and imaginative reading of Plaintiff's complaint and his response

papers does not suggest any way in which Defendant Webber arguably might have inhibited

Plaintiff from exhausting his administrative remedies.  (*See* Dkt. Nos. 1, 47.)

> **3.    Whether "Special Circumstances" Were Plausibly Alleged that Justify
> Plaintiff's Failure to Comply with the Administrative Procedural
> Requirements**

A liberal interpretation of the facts alleged in Plaintiff's complaint and his response

papers raises the possibility of two "special circumstances" that might justify Plaintiff's failure to

pursue his administrative remedies: (1) a reasonable misunderstanding about whether the matter

was grievable, given the state of the law at the time,[11] and (2) the fact that during the assaults, and

---

[11]     A reasonable misunderstanding created by unclear or ambiguous DOCS
regulations might constitute "special circumstances" excusing a plaintiff's failure to exhaust his
available administrative remedies.  *See Giano v. Goord*, 380 F.3d 670, 676, 679 (2d Cir. 2004)
(concluding that "the plaintiff reasonably interpreted DOCS regulations to mean that his only
administrative recourse was to appeal his disciplinary conviction"; reasoning that the Southern
District in *Samuels v. Selsky* had recently endorsed an interpretation of the DOCS regulations
nearly identical to plaintiff's interpretation); *Aponte v. Armstrong*, 03-0186, 2005 U.S. App.
LEXIS 13159, *5 (2d Cir. June 27, 2005).  Here, it was arguably unclear in the Second Circuit in
1998 whether the exhaustion requirement of the PLRA applied to allegations concerning
particular instances of assault by fellow prisoners.  *See Nussle v. Willette*, 224 F.3d 95, 97 (2d
Cir. 2000) (concluding that the exhaustion requirement of the PLRA "does not apply to

for the two-week period following the assaults, Plaintiff could not physically file a grievance

because of his injuries.[12]   However, for the reasons stated above in footnotes 11 and 12 of this

Report-Recommendation, I conclude that none of these two "special circumstances" apply to this

case, based on a liberal reading of the plausible allegations of the complaint and response papers.

    I note that, in reaching these conclusions regarding Defendants' Rule 12(c) motion, I need

not, and do not, consider the Affidavit of Thomas G. Eagen, since I accept as true, for the

purposes of this motion, that Plaintiff did not in fact file a grievance regarding the circumstances

giving rise to the current complaint.  I also disregard Mr. Eagen's assertion that "[s]uch issues

would have been grievable pursuant to the regulations of the Department of Correctional

Services," since I cannot consider such "evidence," which exists outside the record, without

_____

allegations of particular instances of excessive force or assault by prison employees"), *rev'd sub
nom*, *Porter v. Nussle*, 534 U.S. 516 (2002).  However, *Nussle* had to do with assaults by prison
employees, not the failure of prison employees to protect an inmate from assaults by fellow
prisoners.  In addition, I do not liberally read Plaintiff's complaint (or response papers) as
plausibly alleging that he was relying, to his detriment, on the point of law addressed by *Nussle*.
Rather, I liberally read his allegations as stating that he thought that negligence by prison officials
was not a grievable matter.  That point of law was not reasonably in dispute in 1998.

    [12]      The physical impossibility of filing a grievance due to injuries sustained in the
circumstances at issue in the complaint might constitute "special circumstances" excusing a
plaintiff's failure to exhaust his available administrative remedies.  *See, e.g.*, *Goldenberg v. St.
Barnabas Hosp.*, 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, *11-16 (S.D.N.Y. Feb. 22, 2005)
(recognizing that physical disability may constitute "special circumstances" justifying a failure to
exhaust administrative remedies but rejecting plaintiff's wholly conclusory allegation that he was
physically unable to file an administrative grievance under the circumstances, which involved a
failure by plaintiff to even try to file a grievance when he recovered from his alleged disability).
However, again, I do not liberally read Plaintiff's complaint (or response papers) as plausibly
alleging that he was physically incapable of filing a grievance during the two weeks following
the assaults, or that he sought an exception to that two-week time limit.  *See* DOCS Directive
4040 § V(A)(1) (June 8, 1998) ("Exceptions to [the 14-day] time limit [for filing grievances]
may be approved by the IGP supervisor based on mitigating circumstances.") (codified at 7
N.Y.C.R.R. § 701.7[a][1]).

converting this Rule 12(c) motion to a motion for summary judgment under Rule 56, which I

decline to do under the circumstances.  In any event, in addition to being conclusory, this

assertion by Mr. Eagen presents a legal conclusion, which Mr. Eagen does not appear competent

to draw.  (Dkt. No. 44, ¶ 5.)

## B.    *Sua Sponte* Dismissal of Complaint as Against Remaining Defendants

Two reasons exist for the Court to *sua sponte* dismiss Plaintiff's claims against the

remaining Defendants.  First, Plaintiff has, by a verified affirmation filed on April 24, 2005,

actually requested the withdrawal of his claims against Defendant Jackson and Defendant Does

# 2-7.  (Dkt. No. 24 at 9-11, Ex. H.)

Second, during the nearly five years that have gone by since the filing of Plaintiff's

complaint, Plaintiff has named none of the seven Joe Doe Defendants in his complaint, despite

being advised by the Court that "the U.S. Marshals cannot effect service on a 'John Doe'

defendant," and being ordered by the Court to "take reasonable steps to ascertain their identities."

(Dkt. No. 4 at 2.)  In addition, Plaintiff has served only one of the ten Defendants listed in that

complaint[13]–again, despite being advised by the Court of the consequences of failing to serve the

complaint.  (Dkt. No. 4 at 2.)  Indeed, Plaintiff's last filing in this case occurred on October 23,

2003.  (Dkt. No. 47.)  Under such circumstances, several rules authorize the Court to dismiss

Plaintiff's claims against the remaining Defendants.  *See*, *e.g.*, Fed. R. Civ. P. 16(f) ("If a party

. . . fails to obey a scheduling or pretrial order . . . the judge, upon. . . the judge's own initiative,

may make such orders with regard thereto as are just . . . ."); Fed. R. Civ. P. 41(b) (permitting

_____

[13]      (*See*, *e.g.*, Dkt. No. 7 [indicating that the summons as to Defendant McDowell

was returned unexecuted on or about 11/02/00].)

district courts to retain their inherent authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute);[14] N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge shall order it dismissed.").

I note that a third reason might exist warranting *sua sponte* dismissal--namely, that Defendant Webber's failure-to-exhaust argument applies equally to the other DOCS-employed Defendants; thus, the Court might dismiss those claims for failure to comply with the exhaustion requirement of the PLRA, 42 U.S.C. § 1997e(a).  *See Neal v. Goord*, 267 F.3d 116, 123-124 (2d Cir. 2001) (affirming *sua sponte* dismissal for failure to exhaust administrative remedies). However, after *Neal*, the Second Circuit made clear that a district court should not *sua sponte* dismiss a complaint on this ground without first giving Plaintiff notice and an opportunity to be heard, e.g., a chance to present matters outside the pleading showing that his administrative remedies did not in fact exist.  *See Mojias v. Johnson*, 351 F.3d 606, 609-611 (2d Cir. 2002) (reversing *sua sponte* dismissal for failure to exhaust administrative remedies).  Under the circumstances, I conclude that it is not necessary to base the dismissal on this third ground.

### C.    Dismissal With or Without Prejudice

It appears that it would be futile to dismiss Plaintiff's complaint without prejudice in order to permit him to exhaust his administrative remedies, since the time limit in which to file a grievance has apparently long since expired.[15]  *See Cuoco*, 222 F.3d at 112 (in part affirming dismissal with prejudice because repleading would be futile) (citation omitted).

---

[14]      *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 [1962]).

[15]      *See*, *supra*, note 8.

However, it is conceivable that, in a subsequent complaint, Plaintiff may be able to allege *facts* indicating that (1) there was not, in fact, a working grievance program at Marcy Correctional Facility during the occurrence of the events alleged, (2) Defendants inhibited Plaintiff from exhausting his administrative remedies so as to estop one or more of them from raising Plaintiff's failure to exhaust as a defense, or (3) special circumstances exist justifying Plaintiff's failure to comply with the administrative procedure requirements. *See Cuoco*, 222 F.3d at 112 (a court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (internal quotation and citation omitted).

Therefore, I conclude that this action should be stayed for thirty days, to permit Plaintiff to file an amended complaint.  If Plaintiff fails to file such an amended complaint, or if that amended complaint fails to allege (in a non-conclusory way) *facts* indicating one of the three sets of circumstances described above, I recommend that this matter be dismissed *with prejudice*.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant Webber's motion to dismiss (Dkt. No. 44) be **GRANTED** in part and **DENIED** in part, in accordance with the following recommendations; and it is further

**RECOMMENDED** that this matter be **STAYED** for a period of **THIRTY (30) DAYS**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) should be **DISMISSED** as against all Defendants **WITH PREJUDICE**, in accordance with Rules 12(c), 16(f), and 41(b) of the Federal Rules of Civil Procedure, and Local Rule 41.2(a) of the Local Rules of Practice for

this Court, **UNDERLINE PLAINTIFF** files, within the above 30-day time period, an amended complaint that sufficiently alleges *facts* indicating that:

(1) there was not, in fact, a working grievance program at Marcy Correctional Facility during the occurrence of the events alleged; or

(2) Defendants inhibited Plaintiff from exhausting his administrative remedies so as to estop one or more of them from raising Plaintiff's failure to exhaust as a defense; or

(3) special circumstances exist justifying Plaintiff's failure to comply with the administrative procedure requirements; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 14, 2005
        Syracuse, New York

George H. Lowe
United States Magistrate Judge